IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Wayne Steven Tippett, #067443, | ) C/A No: 1:09-593-HMH-SVH |
| Petitioner, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Warden McCall, | ) |
| Respondent. | ) |

Petitioner Wayne Steven Tippett ("Tippett"), proceeding pro se, filed this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that Respondent has miscalculated his sentence and denied him due process by denying him good time credit. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment. [Entry # 21]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Tippett of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #22]. Tippett filed a response in opposition to the motion. [Entry #30]. Having carefully considered the parties' submissions and the record in this case, the court recommends that Respondent's motion be granted.

I.  Factual and Procedural Background

Tippett is currently serving a 25-year sentence after having pleaded guilty to six counts of armed robbery. After pleading guilty on July 24, 1972, Tippett escaped from the

custody of the South Carolina Department of Corrections (SCDC) and was apprehended later that day. He subsequently pleaded guilty to escape and received an additional one year concurrent sentence, which expired on June 5, 1973. Tippett again escaped from prison on December 11, 1976, and he remained at large until 1986, when he was located in the Utah Department of Corrections. The record reflects that Tippett pleaded guilty to aggravated kidnapping in Utah on March 26, 1986, and that he was sentenced to fifteen years to life. Ultimately, South Carolina dismissed its warrant for Tippett's December 1976 escape because of the speedy trial act and instead filed a detainer against him, based on his incomplete 25-year sentence for armed robbery. Once Tippett completed his Utah kidnapping sentence on February 27, 2001, he refused extradition to South Carolina to complete his 25-year armed robbery sentence, which had been tolled at the time of his escape. After fighting extradition from February 27, 2001 to October 16, 2002, Tippett returned to SCDC on October 25, 2002 to serve the remainder of his 25-year sentence.

Tippett's initial sentence calculation report indicated that his armed robbery sentence began on April 3, 1972, and would expire on December 3, 1988— after 16 years, 8 months of service, or 200 total months—based upon the assumption that Tippett would serve his time and earn the then-current 15 day/month available good time credits of 8 years and 4 months. Tippett argues that the 8 year and 4 month good time period represents an automatic one-third reduction in his sentence rather than the estimated good time he would have received had he not escaped and otherwise continued to have earned good time credit.

On March 23, 2006, the SCDC recalculated Tippett's sentence to credit him with the time served from his date of incarceration until his escape and the good time earned prior to his escape. The recalculation reflected a balance of 6,332 days owed, for a current max-out date of July 7, 2011.[1] Upon Tippett's re-entrance into the SCDC on October 25, 2002, the time began running again on Tippett's 25-year sentence for armed robbery, and the availability of earning credits towards his sentence resumed.

Since his October 2002 return to the SCDC, Tippett has filed numerous grievances challenging SCDC's calculation of his sentence. On April 26, 2007, Tippett appealed several denials of his inmate grievances by the South Carolina Administrative Law Court (the "ALC") to the South Carolina Court of Appeals. In his appeal, Tippett challenged the denial of his grievance contesting a disciplinary conviction for escape following his 1976 escape from Oaklawn Correctional Institution, the dismissal of his grievances contesting the loss of 20 days of goodtime credits following his 1972 escape, the denial of sentence credits for time served in a Utah county jail while contesting extradition and the allegedly unlawful recalculation of his sentence term. *Tippett v. S.C. Dept. of Corr.*, 04-ALJ-04-00590, 04-ALJ-04-0592, 05-ALJ-04-0135, 05-ALJ-04-0136 (Final Br. of Appellant; Final Reply Br.

---

[1]Respondent notes that the recalculation 2006 recalculation provided Tippett with "too much good time credit" because the calculation was made using 20-day-per-month available credit, rather than the then-applicable 15-day-per-month available credit, which was applicable for the period prior to his 1976 escape. Respondent's Return at 5 [Entry #21-1] (*citing* S.C. Code Ann. § 55-8 (1962)). Respondent has not argued, though, that a further computation based on the 1962 statute would be appropriate.

of Appellant). In an unpublished opinion, the South Carolina Court of Appeals affirmed the ALC's decision on all grounds. *Tippett v. S.C. Dept. of Corr.*, Op. No. 631 (S.C. Ct. App. Nov. 12, 2008). Tippett did not appeal the Court of Appeals' ruling to the South Carolina Supreme Court.

In his present habeas petition, Tippett raises four grounds for relief:

1. Denial of due process through the unlawful taking of 20 days of goodtime credits through a false disciplinary conviction for escape;

2. Denial of due process through the unlawful taking of 20 days of goodtime credits through a second false conviction for escape in 1972;

3. Denial of due process, equal protection, and double jeopardy violation through the SCDC's refusal to credit 20 months of post-conviction confinement in Utah while extradition was challenged; and

4. Denial of due process, equal protection, cruel and unusual punishment, and ex post facto violation through incorrect sentence calculation and SCDC's refusal to have his administrative complaints meaningfully heard.

Respondent has filed a return to Tippett's petition and a motion for summary judgment on all of Tippett's claims.

II.    Discussion

   A.    Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a

genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

>    B.    Habeas Corpus

>        1.    Section 2241 Generally and Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, C/A No. 0:08-607-RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008).

Before a state prisoner can seek federal habeas relief under 28 U.S.C. § 2241, he must first exhaust any state court remedies that may be available.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (noting state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas corpus petition); *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 490–91 (1973) (exhaustion required under § 2241). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). "Where questions concerning exhaustion arise, the petitioner bears the

burden of demonstrating that state remedies have, in fact, been exhausted." *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The exhaustion requirement "preserves the respective roles of state and federal governments and avoids unnecessary collisions between sovereign powers." *Fain v. Duff*, 488 F.2d 218, 224 (5th Cir. 1973) *(discussing Braden*, 410 U.S. 484).

South Carolina law provides that, as to certain prison administrative decisions that affect an inmate's sentence, the inmate may seek review of an SCDC decision from the ALC. *See Al- Shabazz v. State*, 527 S.E.2d 742, 750 (S.C. 2000); *see also Slezak v. S.C. Dep't of Corr.*, 605 S.E.2d 506, 507 (S.C. 2004). These issues include situations in which an inmate is disciplined and punishment is imposed, or when an inmate believes that prison officials have erroneously calculated his sentence, sentence-related credits, or custody status. *Sullivan v. S.C. Dep't of Corr.*, 586 S.E.2d 124, 126 (S.C. 2003); *Al-Shabazz*, 527 S.E.2d at 750. Generally, a state prisoner's sentence calculation claim will fall within the category of administrative issues that the South Carolina Supreme Court has identified as properly being raised through the prison grievance process with appeal to the ALC, rather than through a post-conviction relief ("PCR") application filed in circuit court. *See Al-Shabazz*, 527 S.E.2d 742. Pursuant to the South Carolina Administrative Procedures Act ("APA") and the South Carolina Appellate Court Rules, an inmate who is dissatisfied with the decision of the ALC

may seek judicial review from the South Carolina Court of Appeals, and, ultimately, the South Carolina Supreme Court. S.C. Code Ann. § 1-23-610; Rule 242, SCACR. Here, Tippett raises such an administrative issue, because he asserts that the SCDC has improperly calculated his sentence by failing to fully credit him with time served. Accordingly, the exhaustion of his state remedies begins with the administrative grievance procedure of SCDC and review by the ALC as outlined in *Al-Shabazz*, with appeal to the state appellate courts. *Al-Shabazz*, 527 S.E.2d at 752-57 (discussing the application of the APA and the review process); 203(b)(6), SCACR; *see also* S.C. Code Ann. § 1-23-610(A)(1).[2]

## 2. Tippett Has Not Exhausted His Administrative Remedies

Although Tippett alleges that he has exhausted his administrative remedies, Respondent alleges that he failed to do so. A review of the record reveals that Tippett raised the issues in his writ before the South Carolina Court of Appeals; however, there is no evidence in the record showing that he properly sought review by the South Carolina Supreme Court following the issuance of the final order of the Court of Appeals.

Based on the foregoing, the undersigned recommends a finding that Tippett did not fully and properly exhaust his state court remedies with regard to the sentence-start-date issue originally raised in this § 2241 petition. *See Coleman*, 501 U.S. 722 (stating that if an issue

---

[2] This procedure, which applies for most § 2241 issues, is in contrast to habeas corpus issues that are appropriately raised under 28 U.S.C. § 2254, which generally commence in circuit court pursuant to the PCR statutes with appeal pursuant to the corresponding appellate court rules. *See generally* S.C. Code Ann. §§ 17-27-10, *et seq.*; Rule 243, SCACR.

is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review). Tippett failed to properly and fairly presented the issue to the state supreme court. *Matthews*, 105 F.3d at 911 ("To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court."); *cf. In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990), and *State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding a petitioner need not petition for rehearing and certiorari in appeals from criminal convictions or post-conviction relief matters before proceeding to federal court).[3] Based on Tippett's failure to exhaust his state court remedies, the undersigned recommends that Respondent's motion for summary judgment be granted. Further, even if Tippett's claims are considered on their merits, the undersigned recommends that Respondent's motion for summary judgment be granted.

    3.    Due Process Claims

Tippett challenges the validity of his disciplinary conviction by the SCDC for his escapes in 1972 and 1976. Tippett alleges that he did not escape in 1976, arguing that "a false disciplinary conviction" has been entered into his prison computer records and that he was not afforded due process in relation to that SCDC disciplinary conviction.

Tippett's claims fail on the merits. The Due Process Clause of the Fourteenth

---

[3] This rule has not been extended to administrative sentence calculation decisions arising out of SCDC and the Administrative Law Court.

Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. CONST. amend. XIV § 1. Prison officials must accord an inmate minimal due process requirements for a disciplinary hearing, as such hearings could result in deprivation of a state-created liberty interest—good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). The Supreme Court outlined the following due process protections to which an inmate is entitled in a prison disciplinary proceeding that put the inmate's liberty interest at stake: 1) advance written notice of the charges; 2) a written statement citing the evidence relied upon and the reasons for the action taken; and 3) the inmate's right to call witnesses and present documentary evidence, if institutional safety will not be jeopardized. *Id.* at 563–67.

The minimum requirements of procedural due process are not met unless the findings of the prison disciplinary board are supported by "some evidence" in the record. *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and it is met if there is any evidence in the record that could support the decision. *Id.* at 455-56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Supreme Court noted in *Hill*,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455–56. Upon review of a disciplinary proceeding, the court should determine only whether the decision of the disciplinary hearing officer ("DHO") to revoke good time credits has some factual basis. *See id.*; *McPherson*, 188 F.3d at 786.

Respondent reports that the SCDC does not have the disciplinary hearing records from 1972 and 1976. Nonetheless, the undersigned recommends a finding that Tippett's guilty plea to the criminal escape charge in 1972 alone is sufficient factual basis for SCDC to have imposed the 20-day-per-month loss of good time. Regarding Tippett's escape in 1976, SCDC's disciplinary policy in effect in and since December 1976 allows for a disciplinary hearing to be held in the absence of an escaped inmate. *See* Aff. of Sandra Bowie; SCDC Policy/Procedure OP-22.14. [Entry # 21-14]. As with his escape in 1972, Tippett does not deny having left Oaklawn Correctional Institution in 1976.

The record in this matter reveals there was more than merely "some" evidence to support the DHO's decision to revoke good time credits for Tippett's escapes in 1972 and 1976. Therefore, Tippett cannot successfully argue that he was not afforded due process regarding his escapes. As such, Tippett's constitutional rights were not violated, and summary judgment should be granted.

4.    No Credit for Utah Jail Time

Respondent also asserts that it is entitled to summary judgment because the re-computation established the correct release date. Tippett alleges that he should receive credit for the time he spent in jail in Utah while contesting South Carolina's attempt to

extradite him so he could serve the remainder of his 25-year sentence.

For several reasons raised by Respondent, the undersigned recommends summary judgment be granted on this ground. First, the decision as to whether Tippett is entitled to credit for time spent in jail in Utah while contesting extradition is a matter of state law and is not a constitutional claim subject to relief pursuant to 28 U.S.C. § 2241. South Carolina inmates receive credit for time served pursuant to the terms of S.C. Code Ann. § 24-13-40. Thus, the application of the statute is a matter of state law and not federal constitutional law.

Additionally, the undersigned agrees with Respondent that the South Carolina Court of Appeals has already decided the issue of whether Tippett was entitled to credit for his jail time in Utah while contesting extradition, and therefore, res judicata bars its relitigation. *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991).

Finally, the court finds without merit Tippett's allegation that the double jeopardy clause requires that credit be given for the time he spent in a Utah county jail while contesting extradition. The double jeopardy clause only applies to multiple punishments for the same offense. *See* U.S. CONST. amend. V. Tippett's time served in Utah for aggravated kidnapping does not satisfy or overlap with the 25-year sentence imposed upon him in South Carolina for his 1972 guilty plea to armed robbery. The undersigned recommends Respondent's motion for summary judgment be granted on this ground as well.

### 5.     Sentence Computation Not Ex Post Facto Violation

Tippett also alleges an *ex post facto* violation on grounds that he has not been given

the benefit of sentence calculations based upon the law in effect at the time of his sentencing in 1972. Specifically, Tippett asserts that the SCDC has "failed to take into consideration the abated (suspended) portion that was deducted from his sentence" or "the last one third (8-years and 4-months) of [his] 25-year sentence." *See* Pet. at 7, 9 [Entry #1]. The undersigned disagrees.

Tippett appears to have mistaken the estimated good time credit of 3,000 days (8 years and 4 months) on his sentence calculation sheet as an automatic entitlement to a one-third abatement of his sentence. The law in effect at the time, S.C. Code Ann. § 55-9, does not provide for any automatic sentence reductions; rather, it relates to good time credits.[4] Tippett has not demonstrated any error in the calculation of his sentence. Therefore, this claim also fails, and the undersigned recommends Respondent's motion for summary judgment be granted on this issue.

III.    Conclusion

For the foregoing reasons, it appears the claims Tippett seeks to raise in this § 2241 Petition have not been fairly presented to the state appellate courts or otherwise have no merit. Accordingly, the undersigned recommends that Respondent's motion for summary

---

[4] Former S.C. Code. Ann. § 55-9, now codified as § 24-13-220, read: "The provisions of § 55-8 shall also apply to persons whose sentences have been commuted, and in computing the time to be credited on the sentence as commuted the basis shall be on the record of the prisoner from the date of commutation. And when a sentence has been imposed and a portion thereof suspended, time off for good behavior shall be deducted from and computed on the time the person is actually required to serve and the suspended sentence shall begin on the date of his release from servitude as herein provided."

judgment [Entry # 21] be granted.

    IT IS SO RECOMMENDED.

*/s/ Shiva V. Hodges*

January 5, 2011                                      Shiva V. Hodges
Florence, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**